

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

WK:DCP
F. #2011R01766

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 22, 2017

By Hand and ECF

Honorable William F. Kuntz
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    Wayne Wilson v. United States
               Civil Docket No. 16-587 (WFK)

Dear Judge Kuntz:

        On July 31, 2013, Wayne Wilson ("Wilson" or "Petitioner"), after a jury trial, was convicted by this Court of one count of knowingly and intentionally conspiring to distribute and possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 846, and one count of knowingly and intentionally attempting to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846. On February 3, 2015, Wilson was sentenced to 33 months imprisonment for each count, to run concurrently, three years supervised release, and a $200.00 special assessment. Following his conviction, Wilson did not appeal his conviction and instead filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, which was denied by the Court in November 2015. The Court's denial of that motion was upheld by the Second Circuit Court of Appeals in May 2016. Wilson filed an additional habeas petition, pursuant to 28 U.S.C. § 2241 in January 2016, which the Court deemed a successive petition and transferred to the Second Circuit in March 2016. Wilson filed a motion with the Second Circuit for leave to file a successive petition. In June 2016, the Second Circuit determined that the habeas petition filed pursuant to § 2241 was not a successive petition and transferred it back to the Court. After the Second Circuit returned the case, the Court ordered Michael Handwerker, trial counsel for Wilson, to file an affidavit responding to Wilson's claims and ordered the government to respond to Wilson's claims.

## STATEMENT OF FACTS

### I. Background

The Court is deeply familiar with the facts of this case from, among other things, presiding over trial and the parties' extensive briefing for the Petitioner's first habeas petition. The government therefore provides only a brief summary of the facts below, and respectfully refers to the trial record and the government's opposition briefing to Wilson's first § 2255 petition. See Wilson v. United States, 11-CR-770, DE 108 (WFK) (July 24, 2015) (opposition to § 2255); Wilson v. United States, 11-CR-770, DE 1114 (WFK) (Aug. 28, 2015) (opposition to an evidentiary hearing).

On November 14, 2011, a grand jury sitting in the Eastern District of New York returned a four-count indictment against Wilson and co-defendants Coretta Womack and Lori Allen. Wilson was charged in two counts: Count One charged that in or about and between May 2011 and October 2011, Allen, Womack and Wilson knowingly and intentionally conspired to distribute and possessed with intent to distribute marijuana, a Schedule I controlled substance, contrary to 21 U.S.C. § 841(a)(1). Count Four charged that on or about October 12, 2011, Wilson knowingly and intentionally attempted to distribute and possess with intent to distribute a controlled substance involving a substance containing marijuana, a Schedule I controlled substance, contrary to 21 U.S.C. § 841(a)(1).

Trial began on July 29, 2013 and Wilson was represented by Michael Handwerker, Esq. ("Handwerker" or "trial counsel"). The evidence at trial established that petitioner, together with Lori Allen and Coretta Womack, two corrupt postal workers, discovered parcels of marijuana sent through the United States Postal Service, stole the marijuana within those parcels, and then sold that marijuana for thousands of dollars. Wilson's role in this scheme was to receive the parcels that Womack and Allen identified as containing marijuana, and then to sell them to other drug traffickers through connections that Wilson possessed. After Womack was arrested, she placed a monitored phone call to Wilson informing him she had another package, which Wilson offered to pick up. Law enforcement agents then set up a meeting between Womack and Wilson during which Wilson gave Womack money, took a parcel that he believed contained marijuana from her trunk and put it inside his vehicle. Wilson was promptly arrested and, after his arrest, waived his Miranda rights and proceeded to give a statement in which he confessed to his exact role within the conspiracy and admitted that he believed he was collecting another parcel containing marijuana on the date of his arrest. Wilson was convicted on both counts on July 31, 2013.

### II. Procedural History

Following his conviction, on February 13, 2015, Wilson filed a notice of appeal with the Court of Appeals for the Second Circuit (the "Second Circuit"), but never filed a brief or otherwise pursued the appeal. Subsequently, on June 29, 2015, Petitioner

2

filed a petition with the Court, pursuant to 28 U.S.C. § 2255 (the "First Petition"),[1] arguing that he was deprived of his Sixth Amendment right to effective assistance of counsel. On November 23, 2015, the Court denied the First Petition in its entirety. By Mandate issued on May 27, 2016, the Second Circuit dismissed Petitioner's appeal of that decision. See United States v. Allen, et al., Mandate, 15-4095 (2d Cir. 2016).

On January 21, 2016, while the appeal of the First Petition was pending, the Wilson filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 (the "Second Petition"). In the Second Petition, the Wilson again raised claims of ineffective assistance of counsel, all related to Handwerker's advice regarding the government's plea offer. Specifically, the Second Petition included four claims: (1) that trial counsel did not explain how the Sentencing Guidelines applied to his case; (2) trial counsel never went over the applicable Guidelines calculation or that Wilson was entitled to a two-point reduction for pleading guilty; (3) trial counsel never explained the benefits of accepting the government's plea offer; (4) and that if Wilson had known his true sentencing exposure, he would have pled guilty. (Second Petition at 1-2).[2]

On March 21, 2016, the Court held that the Second Petition was a successive petition and, accordingly, that it lacked the jurisdiction to address it on the merits and transferred it to the Second Circuit Court of Appeals. See Wilson v. United States, 16-CV-587, DE 8 (Mar. 21, 2016). On May 2, 2016, Wilson moved to the Second Circuit for leave to file a successive § 2255 motion ("Motion for Leave"). In the Motion for Leave, the petitioner asserted four grounds in support of his position: (1) that trial counsel failed to take depositions of potential defense witnesses and to subpoena those witnesses to testify at a pre-trial hearing; (2) that counsel was ineffective for failing to file post-trial motions; (3) that trial counsel failed to allow the petitioner to enter a guilty plea, and; (4) that trial counsel told the jury that Petitioner was a "bit player" which is the "equivalent of a mastermind in the conspiracy." (Motion for Leave at 2-5). On June 2, 2016, the Second Circuit denied the motion because it determined that Wilson's first § 2255 petition was not final as his time to file a petition for a writ of certiorari was not final. See Wilson v. United States, 16-855 (2d Cir. June 2, 2016). On June 16, 2017, the Court ordered trial counsel to file an affidavit responding to Wilson's allegations of ineffective assistance of counsel and for the government to respond to petitioner's allegations. On July 28, 2017, trial counsel submitted an affidavit responding to Wilson's claims of ineffective assistance of counsel.

---

[1] The First Petition consisted of a Memorandum of Law and an Affidavit signed by Steven G. Legum, Esq. Citations to "Def. Mem." refer to the Memorandum of Law, citations to "Aff." refer to the affidavit and citations to "Tr." refer to the transcript of the trial conducted before the Court on July 29 through July 31, 2013.

[2] Later in the Second Petition, Wilson also claimed that trial counsel never advised him of the strength of the government's case. (Second Petition at 4).

3

## ARGUMENT

In the Second Petition, Wilson has again asserted that he was ineffectively represented by trial counsel.  For the reasons set forth below, his claims are legally improper, without merit and should be dismissed without a hearing.

### I.  Applicable Law

#### a.  Habeas Petitions

Since, as the Second Circuit determined, Wilson's motion was not final, the Second Petition constitutes an amended motion.  Motions to amend are governed by Federal Rule Civil of Procedure 15.  See Littlejohn v. Artuz, 271 F.3d 360, 362-64 (2d Cir. 2001) (holding that Rule 15(a) governs habeas motions to amend).  Because Wilson's Second Petition was filed more than 21 days after he served his original motion, a motion to amend can only be granted "with the opposing party's written consent or the court's leave." Fed R. Civ. P. 15(a).  Although courts should "freely give leave when justice so requires," id., a motion to amend will be denied in the event of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003) ("it is well established that leave to amend a complaint need not be granted when amendment would be futile"); Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir.1999) (holding that district court may deny leave to amend on grounds of futility).  The discretion afforded to the district court safeguards against the possibility that Rule 15 "will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse of the writ, regardless of the procedural posture of the case at the time the motion to amend is brought." Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002).

#### b.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees the right of "effective assistance of counsel" to criminal defendants. Strickland v. Washington, 466 U.S. 668, 686 (1984).  Strickland created a two-pronged test that defendants must satisfy to establish constitutionally ineffective assistance of counsel.  First, counsel's representation must "[fall] below an objective standard of reasonableness." Id. at 688.  Second, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692.  This means that even a "professionally unreasonable" error by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.  The defendant bears the burden of demonstrating ineffective assistance of counsel, see Chang v. United States, 250 F.3d 79, 84, 86 (2d Cir. 2001), and "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

4

The two-prong <u>Strickland</u> standard is "highly demanding." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382 (1986). Judicial scrutiny of counsel's performance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)). As such, in order to constitute ineffective assistance of counsel, a petitioner must show that defense counsel's representation "was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." <u>Kimmelman</u>, 477 U.S. at 381. Counsel's performance is evaluated from counsel's perspective at the time of the alleged error. <u>Id.</u> Assessments of the reasonableness of counsel's performance should be done "bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 689).

To establish prejudice, a petitioner must demonstrate not just "some conceivable effect," <u>Strickland</u>, 466 U.S. at 693, but "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Lynn v. Bliden</u>, 443 F.3d 238, 247 (2d Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. In deciding an ineffective assistance of counsel claim, a court need not address both prongs of the <u>Strickland</u> inquiry if the petitioner makes an insufficient showing on either one. <u>See Strickland</u>, 466 U.S. at 697; <u>see also Barry v. United States</u>, No. 14-CV-5898 (RJD), 2015 WL 3795866, at *2 (E.D.N.Y. June 17, 2015) ("Lack of prejudice, in turn, entirely disposes of the . . . ineffectiveness claims without the need to reach the question of deficient performance."). In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." <u>Strickland</u>, 466 U.S. at 697; <u>see also</u> <u>Carneglia v. United States</u>, No. 03-CV-6388 (ADS), 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006).

II. The Second Petition Constitutes an Improper Amendment

The Second Petition should be dismissed because the claims contained in both the Second Petition and the Motion for Leave are plainly futile.[3] <u>See Ellis v. Chao</u>, 336 F.3d 114, 127 (2d Cir. 2003) ("it is well established that leave to amend a complaint need not be granted when amendment would be futile"). In both petitions, Wilson effectively rehashs the

---

[3] It is unclear whether the claims that Wilson raised in his Motion for Leave are properly before the Court. They were not included in the Second Petition and have never been presented to this Court. However, in the interest of efficiency and an effort to circumvent additional briefing, the government also responds to the claims in the Motion for Leave.

same arguments he made in the First Petition, albeit with less detail. None of the Petitioner's claims were credited by the Court. As discussed below, the claims are plainly meritless and in contrast with the First Petition are now directly rebutted by trial counsel's sworn affidavit responding to the petitions. Accordingly, the Second Petition is an improper amended § 2255 petition and should be denied.

## III. Petitioner Was Effectively Represented at Trial

In addition, even if the Second Petition is a proper amendment, it is plainly meritless. In the Second Petition, Petitioner claims that his Sixth Amendment rights were violated by trial counsel's performance advising the Petition whether to accept the government's plea offer. In particular, Wilson argues that (1) trial counsel did not explain how the Sentencing Guidelines (the "Guidelines") applied to his case; (2) trial counsel never went over the applicable Guidelines calculation or that Wilson was entitled to a two-point reduction for pleading guilty; (3) trial counsel never explained the benefits of accepting the government's plea offer; (4) and if he had known his true exposure, Wilson would have pled guilty. Moreover, in the Motion for Leave, Wilson summarily reiterated his claims about trial counsel's performance during the guilty plea and added three additional claims, including that (1) trial counsel failed to take depositions of potential defense witnesses and to subpoena those witnesses to testify at a pre-trial hearing; (2) counsel was ineffective for failing to file post-trial motions, and; (3) trial counsel told the jury that petitioner was a "bit player" which is the "equivalent of a mastermind in the conspiracy."

As set forth below, not only does Petitioner fail to demonstrate that trial counsel's performance was legally deficient, but he also fails to establish prejudice, and the Petition should therefore be denied without a hearing.

### a. Trial Counsel's Performance Was Not Deficient

In the Second Petition and the Motion for Leave, Wilson again asserts that he was ineffectively represented by trial counsel. As set forth below, each of these claims is without merit and should be dismissed without a hearing.

#### i. Petitioner's Claims of Ineffective Assistance Because of Inadequate Advice in Plea Bargaining Should Be Rejected

The right to effective assistance of counsel extends to plea bargaining. See, e.g., Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); Padilla v. Kentucky, 559 U.S. 356 (2010). The two-part deficient performance and prejudice test fashioned by the Court in Strickland is applied in the context of ineffective assistance claims based upon the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Lafler, 132 S. Ct. at 1384. As the Supreme Court held in Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012), "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." See also Cardoza v. Rock, 731 F.3d 169, 178 (2d Cir. 2013) ("[i]t is well-settled that defense counsel have a

'constitutional duty' to convey any plea offers from the government and to advise their clients on the 'crucial decision' whether to accept a plea offer") (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003)).

As with all ineffective assistance of counsel claims, it is incumbent upon the defendant to establish prejudice. See Frye, 132 S. Ct. at 1409. To establish prejudice, "a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Lafler, 132 S. Ct. 1384 (citation omitted). In the context of a rejected plea agreement,

> a defendant must show that but for ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 1384. See also Frye, 132 S. Ct. at 1409 ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.").

Courts have expressed considerable skepticism regarding defendants' self-serving statements that they would have pleaded guilty but for counsel's misadvice. "[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible." Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003). See also Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986) (expressing doubt as to whether defendant had shown prejudice where he did not argue in his brief that he would have accepted plea agreement and cited no evidence prior to conviction to show a desire to plead guilty to a lesser charge); United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998) (relying on objective evidence in combination with defendant's statement); Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir. 2002); Bicaksiz v. United States, 234 F.Supp.2d 202 (E.D.N.Y. 2002).

In the First Petition, Wilson claimed that trial counsel advised against taking the plea offer because he thought Petitioner should get a better offer than two corrupt postal employees. (Aff. ¶ 14). Specifically, Petitioner stated that "the defendant was offered the same plea bargain as the co-defendants . . . [W]hen the defendant was advised of this, counsel advised the defendant that he would not pursue that avenue." Id. The Court rejected that argument, finding that Wilson demonstrated neither deficient performance nor prejudice. See Wilson v. United States, 11-CR-770, at *9-10 (WFK) (Nov. 25, 2015) ("Petitioner admits trial counsel did everything he was constitutionally required to do so – trial counsel advised Petitioner of the plea deal and presented his opinion of the deal to Petitioner.").

7

In the Second Petition, Wilson has pivoted and raised new claims, claims that were inexplicably not part of the First Petition and, in fact, run counter to the claims raised in the First Petition. Specifically, Petitioner argues that trial counsel did not explain the Sentencing Guidelines or advise him of applicable Guidelines, including the two-point reduction for pleading guilty, or generally advise him of the benefit of pleading guilty. Factually, Wilson's claims are self-serving and contradicted by the record. Not only did Wilson not raise these claims in the First Petition, the language of the First Petition concedes that trial counsel did explain the plea offer to him, including the applicable Guidelines range. Wilson admits that trial counsel told him the plea offer was the same that the co-defendants received and that he should get a better offer. In fact, Petitioner specifically stated that he was advised that the plea offer "would have resulted in a sentence only two-thirds of that which was imposed." (Aff. At ¶ 14). Accordingly, Wilson has conceded that he was told of the potential length of his sentence by trial counsel. The notion that trial counsel was able to convey the substance of the government's plea offer, including the possible term of imprisonment, without describing the applicable sentencing Guidelines defies logic.

In fact, it is clear that trial counsel did exactly that. As trial counsel confirmed in his affidavit, he advised Wilson of the government's plea offer, explained the Guidelines and how they would operate in his case, including the reduction if he pled guilty, and advised Wilson of the potential immigration consequences of the plea. (See Handwerker Aff. ¶ 3).

Notably, even assuming, arguendo, that Wilson's claims are factually accurate, he has not presented any evidence to demonstrate prejudice, i.e., that but for counsel's performance, he would have pleaded guilty, that the Court would have accepted his plea, and that he would have been given a lower sentence. In the First Petition, Wilson did not even allege that he would have pleaded guilty, just that a "negotiated plea should have been pursued." (Aff. ¶ 14). Following the Court's opinion directly pointing out that fact, Wilson shifted his position to claim that, but for trial counsel's advice, he would have accepted the government's plea offer. But this is inconsistent with his position at the time of trial. In fact, as trial counsel noted, Petitioner decided to reject the plea offer, both because he did not believe the offer was fair but also because of the immigration consequences that would stem from accepting the plea. (Handwerker Aff. ¶ 3).

### ii. Petitioner's Claims of Ineffective Assistance for Failing to Interview and Call Witnesses Should Be Rejected

In the Motion for Leave, Wilson claims that trial counsel was ineffective for his decision not to send an "investigator to interview appellants [sic] witnesses and take their deposition" and call them to testify at a pre-trial hearing requested by the Petitioner. (Second Circuit Motion at 9). Petitioner's arguments are cursory, yet duplicative, versions of the same claims included in the First Petition and should be rejected.

With regard to the Petitioner's claim that trial counsel should have called witnesses at a pre-trial hearing, as discussed in the government's response to the First Petition, it is settled law that "[t]he decision of whether to call or bypass a particular witness

8

is a question of trial strategy which courts will practically never second guess." Carvajal v. Artus, 07-CV-10634 (CM), 2008 WL 4555531, at *37 (S.D.N.Y. Oct. 10, 2008); see also United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (holding that the decision as to which witnesses to call is "a tactical decision of the sort engaged in by defense attorneys in almost every trial."); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987) (same). This is the case even if the witness may present exculpatory evidence. See United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("counsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation'" (quoting United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997))).[4]

     Petitioner's allegations that trial counsel failed to depose or subpoena unnamed witnesses does not demonstrate deficient performance or prejudice. Wilson provides absolutely no indication what these witnesses would have said, why it would have helped him or how it would have changed the result of his trial. Moreover, the same claims were already raised in the First Petition, in a much more detailed form, and were rejected by the Court. With good reason. As discussed in the government's response to the First Petition, trial counsel's decision not to call witnesses, including Wilson's co-conspirators, falls well within the accepted range of reasonable behavior. In fact, the very evidence Petitioner proffers indicates that decision was imminently wise as it would not have exculpated him and would have demonstrated that Wilson was a part of the conspiracy and corroborated his post-arrest confession.[5] See DE 108 at 10-12. The affidavit filed by trial counsel confirms that these were the very reasons he did not call co-defendant Lori Allen or a witness who worked with Wilson renovating Womack's house. Trial counsel confirmed that Lori Allen would have crystalized and brought to the forefront the existence of a conspiracy to steal and distribute marijuana" and would have "corroborated my client's statements to law enforcement." (Handwerker Aff. ¶ 5).[6]  Accordingly, it was a reasonable

---

[4] Moreover, as discussed in detail in the government's response, trial counsel's decision not to make a pre-trial motion to suppress the evidence was not deficient because it would have been futile and could have exposed Wilson to an obstruction enhancement if he filed a sworn affidavit. See DE 108 at 9-10. Trial counsel confirmed in his affidavit here that these were precisely the reasons he did not make a pre-trial motion to suppress Wilson's statements to law enforcement. See Handwerker Aff. ¶ 4.

[5] Similarly, both co-defendants were represented by counsel and would likely not have spoken to Wilson's investigator, let alone have submitted to a sworn deposition.

[6] Petitioner's assertion that trial counsel's performance was deficient because he "refused" to seek the "telephone record upon which the government claimed that appellant conspired to sell drug for two postal workers" is particularly meritless. As trial counsel correctly asserts, the government provided the record of that phone call, and indeed a recording of the actual call, to trial counsel as part of Rule 16 discovery well before the first

strategic decision not to call Allen or other witnesses and nothing in the Second Petition changes that conclusion.

Finally, as discussed in detail in the government's initial briefing, even assuming trial counsel's performance was deficient, there was no prejudice to Wilson. The evidence against Wilson was so overwhelming and calling the witnesses Petitioner advanced in the First Petition would have corroborated that evidence. This is particularly the case with regard to the allegations in the Second Petition which did not even go so far as to identify the witnesses trial counsel failed to call. Accordingly, Petitioner cannot demonstrate a "reasonable probability . . . that the result of the proceeding would have been different." Lynn, 443 F.3d at 247.

> iii.  Petitioner's Claims of Ineffective Assistance Because of Trial
> Counsel's Refusal to File Post Trial-Motions Should be Rejected

Petitioner claims that after he was found guilty, he asked counsel to "file a Rule 29/33 motion for a new trial . . . to have the case dismiss[ed] due to judicial overreaching and bias" and that trial counsel "promise[d] to do so but, made an about face and did not do so." Motion for Successive Petition at 3. Petitioner's claims are legally and factually meritless and should be rejected.

As an initial matter, trial counsel did file a motion for a judgment of acquittal at the close of the government's case. See Tr. 352 (Rule 29 Motion at the close of the government's case). Such a motion renders Petitioner's ineffective assistance claim related to a failure to make a Rule 29 claim "completely meritless." Velez v. United States, No. 05 Civ. 0537(RCC), 2006 WL 1952191,*7 (S.D.N.Y. July 10, 2006). With regard to the Rule 33 motion, trial counsel has confirmed that he advised the Petitioner that he did not see the basis for such a motion and did not file one. See Handwerker Aff. ¶ 9. It was certainly a reasonable decision, particularly on the grounds proffered by Wilson in his Second Petition.[7] The failure to assert a baseless claim does not fall below an objective standard of reasonableness nor prejudice Petitioner. See United States v. Kirsch, 54 F.3d 1062, 1071 (2d Cir.1995) (denying ineffective assistance claim in part because motions not pursued by counsel were without merit); see also James v. Artus, No. 03 Civ. 7612, 2005 WL 859245, at *16 (S.D.N.Y. Apr. 15, 2005) ("counsel cannot be ineffective for failing to raise a meritless claim"); Carbajal v. United States, No. 99 Civ.1916, 2004 WL 2283658, at *6 (S.D.N.Y. Oct. 8, 2004) ("counsel did not render ineffective assistance by failing to raise this meritless claim").

---

of many trial dates. See Handwerker Aff. ¶ 8. It is perplexing how trial counsel could be deficient for refusing to seek evidence that was provided to him months prior to trial.

[7] Petitioner did not raise this claim in the First Petition and it is clear from the Second Petition that there was nothing new to explain why this claim was not included in the First Petition, which was filed with the assistance of counsel.

10

iv. Petitioner's Claims of Ineffective Assistance for Calling the Petitioner a "Bit Player" Should Be Rejected

Petitioner claims that trial counsel was ineffective for "telling the jury during trial that appellant was a bit player in the conspiracy. Motion for Leave at 5. Wilson argued that trial counsel's "prejudicial statement that appellant is a 'bit player' an equivalent of a mastermind in the conspiracy, prejudice[d] appellant and constitute[d] gross ineffective assistance of counsel." Id. Wilson's claim is both based on a fundamental misunderstanding of the term "bit player" and does not demonstrate deficient performance as a matter of law. Rather, trial counsel's use of the term "bit player" was part of a trial strategy to minimize Wilson's involvement in the conspiracy, a strategic decision that the Court has already determined is reasonable.

As trial counsel noted, and as is supported by a common sense understanding of the term, counsel "argued that the defendant was a 'bit player,' which meant that he was not involved in the conspiracy. My statement was not…. a concession that he was the equivalent of a mastermind in the conspiracy.'" (Handwerker Aff. ¶ 7). Indeed, as noted in the government's opposition to the First Petition, trial counsel's affidavit is supported by the trial record. Throughout the trial, counsel built the theory that the scheme was created and carried out by two corrupt postal workers and Wilson was not involved. During his summation, trial counsel put forth that Wilson was a "sacrificial lamb," (Tr. 436), and that all of the government's circumstantial evidence comported with the reality that Wilson was merely a post office box holder who previously did legitimate contracting work for Allen and Womack. (Tr. 434-35). Trial counsel's focus on the fact that Wilson was in possession of only $340 at the time of his arrest was designed to further bolster this "sacrificial lamb" theory. See, e.g., Tr. 281–82 (establishing on cross-examination that $340 would not be enough to buy distributional amounts of marijuana), Tr. 433 ("[I]f a trafficker did deals for $12,000, why on the day in question does he have 340?"). Moreover, trial counsel repeatedly argued that the evidence did not directly establish that Wilson received drug parcels from Womack – indeed he obtained repeated statements that the drug package Allen and Womack tampered with was not seen being passed to Wilson and no one could establish the contents of the packages he was seen carrying away from the post office.

These were a valid strategy for trial counsel to implement and "[i]t is not in the trial court's power to 'second-guess trial counsel's defense strategy simply because the strategy has failed.'" DiMattina v. United States, 949 F. Supp. 2d 387, 414 (E.D.N.Y. 2013), appeal withdrawn (Nov. 15, 2013) (quoting United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir.1987)). Also, Wilson cannot demonstrate prejudice. Not only was trial counsel's "bit player" comment part of a valid strategy, even if that strategy were legally insufficient, as discussed in the government's response to the First Petition, the evidence against Wilson was so overwhelming, use of a different strategy would not have changed the result of the proceeding.

11

b. Even If Trial Counsel's Performance Was Deficient
the Petitioner Did Not Suffer Prejudice

To demonstrate prejudice "[t]he the defendant must show that there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." Strickland, 466 U.S. at 694. Notably, if Petitioner
fails to show prejudice, there is "no need to consider the objective reasonableness of
counsel's actions." United States v. Birkin, 366 F.3d 95, 101 (2d Cir. 2004); see also
Strickland, 466 U.S. at 697 ("[T]here is no reason for a court . . . to address both components
of the inquiry . . . if the defendant makes an insufficient showing on one. . . . If it is easier to
dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that
course should be followed.").

Even if taken as true, none of trial counsel's alleged deficiencies, whether
taken separately or in their totality, undermined the reliability of the proceeding or created a
reasonable probability that the outcome of the trial would change. See id. at 696 ("In every
case the court should be concerned with whether, despite the strong presumption of
reliability, the result of the particular proceeding is unreliable because of a breakdown in the
adversarial process that our system counts on to produce just results."). In fact, because the
weight of the evidence against Wilson was so overwhelming, Petitioner's claims against
pieces of evidence or specific decisions do not call the conviction into question.

IV. The Petition Should be Denied Without a Hearing

The Second Circuit has held that "[a] defendant seeking a hearing on an
ineffective assistance of counsel claim need establish only that he has a plausible claim of
ineffective assistance of counsel, not that he will necessarily succeed on the claim," and the
"procedure for determining whether a hearing is necessary is in part analogous to a summary
judgment proceeding" in that, "[i]f material facts are in dispute, a hearing should usually be
held, and relevant findings of fact made." Raysor v. United States, 647 F.3d 491, 494 (2d
Cir. 2011) (internal quotation marks and alterations omitted). Also, "when the judge who
tried the underlying proceedings also presides over a [28 U.S.C.] § 2255 proceeding, a full-
blown evidentiary hearing may not be necessary." Id.

Here, none of Petitioner's claims raise a factual dispute that a hearing would
be necessary to resolve. Each of the Petitioner's allegations regarding trial counsel's
allegedly deficient performance is a legal question of whether counsel's actions before and
during the trial fell below the standard of being "unreasonable under prevailing professional
norms." Kimmelman, 477 U.S. at 381. Because "the motion and the files and records of the
case conclusively show that [Wilson] is entitled to no relief," this court should dismiss the
petition without a hearing. 28 U.S.C. § 2255; see also Lake v. United States, 465 F. App'x
33, 34-35 (2d Cir. 2012) ("a hearing is not required when, 'viewing the evidentiary proffers .
. . and record in the light most favorable to the petitioner,' it is clear that the petitioner has
failed to establish a 'plausible claim of ineffective assistance of counsel.'") (quoting Puglisi

v. United States, 586 F.3d 209, 213 (2d Cir. 2009)); Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) ("It is within the district court's discretion to determine whether a hearing is warranted."); Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing. The district court reasonably decided that the testimony of [petitioner] and his trial counsel would add little or nothing to the written submissions.").

## CONCLUSION

For the foregoing reasons, the Second Petition is without merit and should be dismissed in its entirety without a hearing.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By: _____

David C. Pitluck
Assistant U.S. Attorney
(718) 254-6108

cc:   Clerk of Court (WFK) (by ECF)
      Wayne Wilson (by Certified Mail)
      Reg. #:79640-053
      Moshannon Valley CI
      555 GEO Drive
      Philipsburg, PA 16866

13